## MILLER v. THOMPSON.

No. 7691—Opinion Filed Jan. 30, 1917.

Rehearing Denied April 16, 1918.

(171 Pac. 850.)

### Deeds—Setting Aside Deed—Grounds.

Where the weight of the evidence shows that for many years the relation of client and attorney had existed between a vendor and vendee, that the vendor imposed implicit confidence in the vendee, and constantly relied upon the vendee for advice, and the vendor had reached the age of 88 years, and was of feeble mind, but not incompetent at the time of execution of the deed, and the consideration named in said deed was a grossly inadequate consideration for the property described in said deed, equity will set aside such deed, even though it is shown that the relation of client and attorney had ceased to exist between the vendor and vendee at the time of the execution of such deed.

(Syllabus by Collier, C.)

Error from District Court, Creek County; Henry Asp, Special Judge.

Suit for injunction by Rufus B. Thompson against C. W. Wills, individually and as guardian, with receivership, and cross-petition by defendant, as guardian of Thomas Wills, an incompetent with leave to plain-

tiff to dismiss the petition and to file an answer to the cross-petition. Judgment for plaintiff, motion for new trial overruled, and, after the death of Thomas Wills, the cause was revived in the name of C. H. Miller, as administrator, and he brings error. Reversed and remanded, with instructions.

John G. Ellinghausen and Riddle & Hammerly, for plaintiff in error.

George S. Ramsey, Edgar A. DeMeules, and Malcolm E. Rosser, for defendants in error.

Opinion by COLLIER, C. The defendant in error instituted suit in the district court of Creek county, Okla., against C. W. Wills, individually, and C. W. Wills, as guardian, alleging that he was the owner in fee simple of an unincumbered right and title of the property described in the petition, and alleging that the plaintiff in error was interfering with plaintiff's tenants and slandering his title, and a decree of court was sought to prevent said defendant from further interfering with plaintiff's property. A temporary injunction was granted, and afterwards dissolved, and by agreement a receiver appointed to collect the rents of the property described in the petition.

The plaintiff in error filed an answer and cross-petition, and in said cross-petition averred that the said defendant in error held a pretended deed to the property executed by said Thomas Wills; that said deed was void, for the reason that at the time of its execution the said Thomas Wills was about 88 years of age, childish and feeble, and was incompetent to transact business; that said pretended deed was obtained by fraud, deceit, and false representations practiced on the said Thomas Wills by the said Thompson; that there was no consideration for the pretended deed; that at the time of the execution of said deed the defendant was, and had been for a long time prior thereto, acting as attorney and legal adviser of said Thomas Wills, and that the friendly relations of said parties were very close and intimate; and that, by reason of the confidential relations existing between them, said Thomas Wills had implicit confidence in the said defendant in error, and by reason thereof said pretended deed was void, and that the title to the property described in said deed was held in trust by defendant in error for the said Thomas Wills. Upon the filing of said cross-petition by plaintiff in error as guardian of Thomas Wills, an incompetent, the defendant in error by leave of court dismissed his petition, and was permitted to file an answer to the cross-petition. In answer to the cross-petition, the defendant in error denied that the said Thomas Wills was the owner of the property described, averring that he, defendant in error, was a fee-simple owner of said property by virtue of said deed and conveyance executed by the said Thomas Wills in consideration of the discharge of an indebtedness due the said Thompson by Thomas Wills in the approximate sum of $20,000, denying that at the time of the execution of the deed, or for a long time prior thereto, he was or had been acting in the capacity of attorney for said Thomas Wills, admitting that he enjoyed the confidence of said Thomas Wills; that he had various dealings with him, resulting in the indebtedness by said Thomas Wills to him in the sum above mentioned; that the deed of conveyance was made in consideration of the release and discharge of said indebtedness; that on the 11th day of February, 1910, he loaned to the said Thomas Wills the sum of $4,000; that on 28th day of February, 1910, he loaned Thomas Wills the sum of $4,900, which loan was evidenced by a promissory note of said date; that on March 28, 1910, he loaned to the said Thomas Wills the sum of $3,000, which was evidenced by a promissory note; that on December 27, 1910, he loaned the said Thomas Wills the further sum of $3,024.14, which amount was evidenced by a certain promissory note; that thereafter, on September 20, 1911, the said Thomas Wills executed a mortgage to him to secure said various sums to the amount of $14,924.14, covering the property involved; that on July 1, 1912, he applied to the said Thomas Wills for the payment of interest upon said amount, and that said interest amounted to $2,308.75, for which amount a note was taken; that on the 1st day of August, 1912, one B. C. Burnett and B. B. Burnett were indebted to the said defendant in error in the sum of $1,621, which said note was indorsed and transferred to the First National Bank of Monett. Mo., which said defendant was compelled to pay to said bank, and that said note was paid to him by the said Burnetts executing a note in said sum, which said note was secured by the said Thomas Wills signing the same, and which defendant accepted upon the distinct understanding on the part of the said Thomas Wills that said amount should be included within the indebtedness secured by the real estate mortgage referred to, and that said mortgage should stand as security for said notes; that on the 9th day of September, 1912, it was agreed between defendant and the said Thomas Wills that defendant would take a deed to the property described, from said Wills to defendant, for the indebtedness evidenced by the different notes referred to, which said indebtedness aggregated approximately the sum of $20,000; that thereupon

the said Thomas Wills executed to the said Thompson the warranty deed hereinbefore mentioned; and further averring that the said Thomas Wills was capable of executing said conveyance, that said transaction was in all respects fair, and that the property involved was worth no more than the sum of $20,000; that by reason of such facts, and the execution of said conveyance, a fee-simple title to all of said property vested in defendant; that, if said fee-simple title did not vest under said conveyance, then he was entitled to have the same declared a mortgage, and his mortgage lien foreclosed upon said property. Defendant in error prayed that he be adjudged to own the fee-simple title to said property, and that title be quieted in him, and that the said C. W. Wills and Thomas Wills be perpetually enjoined from interfering with said title or said property, and further that, if the court found that the title did not vest, then the court should determine the exact amount of indebtedness and hold said conveyance a mortgage lien upon said property, and that the same be foreclosed.

To this answer the said guardian filed a general and special reply. The district judge certified his disqualification, and the said parties agreed upon the Hon. Henry Asp, member of the Oklahoma City bar, as special judge to try said cause. On the trial of the cause the court made the following findings of fact:

"In this case the court has endeavored to ascertain the exact truth as disclosed by the evidence. The court has no desire to shield anybody or to criticize any one in connection with the case. The case has been ably presented by able counsel. It is the duty of the court of equity, as I understand it, to try to do justice as between all parties. The evidence discloses that in 1902— I think it was 1902—the defendant, cross-petitioner, employed the plaintiff, defendant to the cross-petition, as his attorney to try certain litigation arising out of contests on certain town property in the town site of Sapulpa, which litigation lasted for several years, and in which appeals were taken to the Commissioner of the General Land Office, and from there to the Secretary of the Interior, but all that litigation terminated prior to the transactions that are incident to this litigation. The firm of Thompson & Smith had some litigation for the cross-petitioner, involving the taxes on the property in controversy and other property owned by the cross-petitioner in the city of Sapulpa. The evidence disclosed that that litigation was practically handled by Frank P. Smith, of the firm of Thompson and Smith. The court finds that plaintiff, R. B. Thompson, was a partner in the firm of Thompson & Smith. The evidence discloses that during the years 1910 and 1911 the cross-petitioner borrowed from the plaintiff Thompson several sums of money, and executed and delivered to the plaintiff his promissory notes. The first note is dated February 28, 1910, for the sum of $4,900; and the next note is dated March 28. 1910, for the sum of $3,000. The next one is dated December 27, 1910, for $3,204.14. The next one is dated February 11, 1911, for $4,000. (I think that is true that that is a renewal of a note given before these notes introduced in evidence.) The four notes were secured by mortgage dated September 20, 1911, on the property described in the deed in controversy. There is also introduced in evidence a note for $2,308.75, dated July 1, 1912, and another note for $1,621, dated August 1, 1912 which two last notes are not covered by the mortgage, not included within the mortgage. The note for $4,000, and the note for $3,000, the note for $3,204.14 are admitted to have been executed by Mr. Wills to the plaintiff. The court finds from the evidence that the note for $4,900, executed February 28, 1910, was executed by Mr. Wills, and that the plaintiff on the same day delivered to Mr. Wills his check on the Creek Bank & Trust Company, which was received by Mr. Wills and charged to the account of Mr. Thompson on the books of the Creek Bank & Trust Company, and being included in the mortgage of date of September 20, 1911, so recognized by Mr. Wills, and the court is of the opinion that Mr. Wills received the proceeds of that check. The note for $2,308.75, dated July 1, 1912, was executed and delivered by Mr. Wills to the plaintiff for interest on the four notes then held by the plaintiff against Mr. Wills, including the $4,900 note. The court finds that the note for $1,621 is dated August 1, 1912, and was given to the plaintiff by B. C. Burnett and Bates B. Burnett and Thomas Wills; Mr. Wills signing as surety. The aggregate of this indebtedness at the date of the execution of the deed in controversy was approximately $19,000. In addition to this sum, the testimony discloses that there was approximately $3,000 in taxes on the property, which was a lien on the property. The evidence does not disclose that in the creation of this indebtedness. or the settlement of it, that the cross-petition dealt with the plaintiff as his attorney; the loaning of the money being a business transaction in the mind of the court. distinct and apart from any relationship of attorney and client. The court finds that the consideration paid to the cross-petitioner was a fair value of the property included in the deed. In determining this question of value, the court has endeavored to consider all the facts and circumstances introduced in evidence with relation to the condition of the real estate market at the time of the conveyance. and the condition of the property as disclosed by the evidence. The court is of the opinion that at the time of the exe-

cution of the conveyance by Thomas Wills to the plaintiff, that the plaintiff then holding the note for $2,308.75, dated July 1, 1912, and the note for $1,621, dated August 1, 1912, they were unsecured, and requested of the cross-petitioner, Thomas Wills, to secure the same, and called upon said cross-petitioner to secure the same, and stated to Mr. Wills that he was informed that Mr. Wills had signed a bond for $50,-000 to secure the deposits by Creek county in the Farmers' & Merchants' Bank, that he was satisfied the bank was in a failing condition, and that he wanted security on these notes; that the cross-petitioner, Thomas Wills, at the time stated that he would prefer to give to the plaintiff a deed for the property upon which the plaintiff held a mortgage, in satisfaction of the indebtedness. The plaintiff, Mr. Thompson, accepted the proposition and drew a deed, which was executed by Thomas Wills, and duly acknowledged and delivered to the plaintiff. The court finds that, at the time Thomas Wills executed this deed and delivered the same to the plaintiff, he knew that he was executing a deed to this property. The cross-petitioner, Thomas Wills, at the time of the execution of the deed, was 89 years of age, was physically weak, and that his mental faculties were not as strong as they had been in his earlier life. But the court is of the opinion that he had sufficient mental capacity to understand the nature of the transaction, and that he was executing to the plaintiff a deed in payment of his indebtedness to plaintiff; that the cross-petitioner, Thomas Wills, during the years 1910, 1911, and 1912, prior to the execution of this deed, had been transacting business, borrowing money, and executing notes and checks in payment of claims, and had sufficient mental capacity to transact the same; that for a year and half last past the mental faculties of Thomas Wills have been failing. The court finds that at the time of the execution of the deed there was no undue influence used in the way of threats of foreclosure of the mortgage or otherwise to secure the execution of the deed; that the execution of the deed was a voluntary proposition of Thomas Wills, which was accepted by the plaintiff. The court finds that there was a friendship existing between the plaintiff and Mr. Wills, arising out of their business relations. As to the suggestion of the appointment of a guardian for Mr. Wills, as testified to by the witnesses, S. G. Wills and C. W. Wills, the court is of the opinion that that suggestion was made after the execution of the deed. The court is of the opinion that this deed should not be set aside. I do not believe it presents a case within the authorities that ought to require a court of equity to set aside the deed. It is the judgment of the court that the cross-petition of the plaintiff, Thomas Wills, by his guardian, C. W. Wills, be dismissed.

"Judge Riddle: A suggestion—Thomas Wills, through his attorneys, now request the court to make a special finding of fact as to whether or not the relation of attorney and client existed between the said Wills and the plaintiff, Thompson, at the time the deed was executed.

"By the Court: The court will make the finding that at the time of the execution of this deed the relation of attorney and client did exist between Thomas Wills and the firm of Thompson & Smith. Thompson & Smith were his attorneys in matters not connected with the transaction, out of which the execution of this deed culminated. The court finds that at the execution of the deed the plaintiff, Thompson, has no actual knowledge of the pendency of the litigation relating to taxes on the property involved in the deed.

"Judge Riddle: I would like to make this request: Counsel requests the court to find as a matter of fact whether or not the defendant, Wills, reposed personal confidence in the plaintiff, Thompson, by reason of the friendship existing and their relation at the time of the execution of this deed. I think we are entitled under the evidence to have a finding on that point.

"By the Court: The court will make this finding: That there was a personal friendship and confidence existing between the cross-petitioner, Thomas Wills, and the plaintiff, Thompson, arising out of their business relations; but the court, from the evidence, cannot find that this personal confidence was the inducement or caused the execution of the deed in controversy.

"Judge Riddle: Counsel further requests the court to make a special finding as to the value of the property involved in this litigation at the time of the execution of the deed in question. I think we are entitled to that finding.

"By the Court: The court finds that at the time of the execution of the deed the property did not exceed the value of $20,000.

"Judge Riddle: Counsel requests the court to find as a matter of law whether or not, from the facts found, the relation of attorney and client existed between Thompson and defendant Wills at the time of the execution of the deed.

"By the Court: Mr. Ramsey, what was your request, now?

"Mr. Ramsey: I made the request that the court find as a matter of fact that at the time this deed was executed Mr. Thompson was not giving any of his personal attention to any of the law business or legal business of Thomas Wills, and had not been representing Thomas Wills personally, as Thomas Wills' attorney, for at least two years prior to the execution of this deed, and was not as a matter of fact giving any of his services or attention to Thomas Wills' legal business, at the time the deed was ex-

ecuted, nor had he given any of his attention to the legal business for Mr. Wills for at least two years prior thereto, and was not, at the instance of Mr. Wills or at his request or employment, attending to any of Mr. Wills' legal business at the time of the execution of the deed, and had not been for at least two years prior thereto.

"By the Court: The court will so find.

"Judge Riddle: Will the court make my finding of law, as requested, because I think the question was fairly and squarely raised.

"By the Court: The conclusion of law from the facts found: The court finds that the cross-petitioner, Thomas Wills, is not entitled to the relief demanded. The court declines to find as a matter of law that, in the transactions culminating in the execution of this deed, the plaintiff, Thompson, was the attorney for the cross-petitioner, Thomas Wills.

"To all of which judgment, and action of the court, the defendant Thomas Wills, and C. W. Wills, his guardian, in open court duly except, and further excepts to each finding of fact adverse to the interest and claim of the defendant Thomas Wills, and his guardian, C. W. Wills, and to each conclusion of law made by the court."

The court thereupon rendered the following judgment:

"It is therefore considered, ordered, and adjudged and decreed, by the court that the cross-petition of the defendant, C. W. Wills, as guardian of Thomas Wills, an incompetent, be and the same is hereby dismissed, and that the said defendant and cross-petitioner, C. W. Wills, as guardian of Thomas Wills, an incompetent, take nothing by his said action as set forth in his said cross-petition filed herein on the 13th day of November, 1912, and that the deed mentioned and described in the cross-petition of the said defendant C. W. Wills, as guardian of Thomas Wills, an incompetent, executed by the said Thomas Wills on the 9th day of September, 1912, and recorded in Book 61 at page 371, in the office of the register of deeds of Creek county, Okla., and conveying to the said plaintiff, R. B. Thompson, all and singular the east fifty (50) feet of lot one (1) in block forty-seven (47), and the south twenty-five (25) feet of lot twelve (12) in block forty-two (42), and the north forty feet (40) of lot two (2) in block sixty-five (65), all in the city of Sapulpa, in Creek county, state of Oklahoma, according to the official recorded plat of said city, be and the same is hereby adjudged, decreed, and declared to be the deed of the said Thomas Wills, and that by virtue thereof the said plaintiff is the owner in fee simple of said described real estate, and entitled to the possession thereof, and to the rents, issues, and profits thereof.

"It is further considered, ordered, adjudged, and decreed that the receiver heretofore appointed in this action be and he is hereby ordered and directed to turn over to the plaintiff, R. B. Thompson, the possession of said described property; that the said receiver be and he is hereby ordered and directed to make his report in writing to this court within thirty (30) days from this date, showing his receipts and disbursements as receiver.

"It is further considered, ordered, adjudged, and decreed by the court that the said defendant C. W. Wills, a guardian of Thomas Wills, an incompetent, pay the court costs in this action accruing since the 13th day of November, 1913.

"It is further considered, ordered, adjudged, and decreed by the court that the said plaintiff and the said defendants each pay one-half of the costs of the receiver's expenses and allowances for compensation; it appearing that the said receiver was appointed by agreement of the parties to this litigation.

"It is further considered, ordered, adjudged, and decreed by the court that all taxes and proper repair of the premises be paid out of the funds in the hands of the receiver, providing such funds are sufficient to pay the same; that upon the approval by this court of the report and accounts of the receiver, that the said receiver be discharged from further duty and responsibility in the premises; and that any balance of funds in his hands arising out of the receivership be paid to the receiver of the plaintiff herein, R. B. Thompson.

"To which decree, each and every part thereof, the said defendant, C. W. Wills, as guardian of Thomas Wills, an incompetent, duly excepted and still excepts."

Within the statutory time the defendant moved for a new trial, which was overruled and excepted to. Shortly after the above stated decree was rendered the said Thomas Wills died, and the cause was revived in the name of C. H. Miller, as administrator of the estate of Thomas Wills, deceased, and the said C. H. Miller, as administrator aforesaid, brings error to reverse the decree rendered.

We agree with the statement of attorneys for the defendant in error that this case "largely turns upon the facts"—that the law is well settled. We go even further, and are of the opinion, and so hold, that the case turns entirely upon the facts, and that the facts to be considered in this case are as follows:

First. Was $20,000, the amount stated as the consideration in the deed of Thomas Wills to defendant in error for the property

therein described, a fair cash market price for the property?

Second. What were the relations existing by and between the said Thompson and the said Wills prior to and at the time of the execution of said deed?

Third. At the time of the execution of the said deed by Wills to Thompson, was Thompson the attorney of said Wills?

Fourth. Did the said Thompson, at the time of the execution of the deed under review, have the confidence of the said Wills, and did he wrongfully use the same to influence the said Wills to execute said deed?

This being an equity case, it becomes our duty to weigh the evidence and determine the cause in accordance with the weight thereof. The evidence of the defendant in error as to the value of the property in controversy was approximately $18,000, as shown by taking the average values given by the six witnesses introduced by the defendant in error. Disregarding the testimony of Wills, who placed the value of the property at $70,000, which we think was excessive, the evidence of the plaintiff in error as to the value of the property in controversy was approximately $33,900, as shown by taking the average values given by the ten witnesses introduced by the plaintiff in error. The witnesses for the plaintiff in error and for the defendant in error are shown to be persons equally conversant with the values of the property in controversy; all of them being business men, and some of them real estate dealers, in the city of Sapulpa.

It therefore clearly appears by the unquestioned weight of the evidence that the consideration named in the deed executed by Wills to Thompson was not an adequate cash consideration for the property, even if it be admitted that the said sum was paid by Thompson, and as to which there is at least a question as to a certain check testified by Thompson to have been paid by Thompson to Wills. The great inadequacy of consideration named in said deed certainly should have shocked the conscience of the trial judge.

"Ordinarily a mere inadequacy of consideration is not sufficient ground, in itself, to justify a court in canceling a deed; yet, when the inadequacy is so gross as to amount to fraud, or in the absence of other circumstances to shock the conscience, and furnish satisfactory and decisive evidence of fraud, it will be sufficient ground for canceling a conveyance or contract, either execute or executory; the rule being based upon the theory that fraud, and not inade-

quacy of price, is the sole reason for the interposition of equity." Barker et al. v. Wiseman et al., 51 Okla. 645, 151 Pac. 1047.

The evidence in this case is very voluminous, and no possible good could come from reciting the same in detail. The undisputed facts are that the closest relations had existed between Thompson and Wills for many years prior to the transaction under review, that old man Wills had reached the age of nearly 90 years, that he was childish and totally incapacitated to handle a deal of the magnitude involved, and, whether or not Thompson was the attorney for Wills at the time of the transaction, at least Wills so regarded him and relied strictly upon his advice. We are unable to appreciate the attempted subterfuge that the partner of Thompson, and not Thompson, was the attorney for Wills; but, whether or not Thompson was the attorney of Wills at the time the transaction was made, we think is entirely immaterial, as certainly the weight of the evidence clearly shows that Wills was dominated entirely by Thompson, that Wills was "as clay in the hands of the potter" and could be molded in any manner that the interest of Thompson dictated.

We are of the opinion, and so hold, that at the time of the execution of the deed in controversy the weight of the evidence shows that Thompson had the entire confidence of Wills, and abused this confidence to the highest degree, turning the same to his own advantage, when his long previous relations with Wills should have actuated him to protect, rather than wrong, Wills; and this is emphasized when we take into consideration the undisputed testimony that old man Wills had reached the age of 88 years at the time the deed was executed and was in his second childhood, as shown by the ability of Thompson immediately after the execution of the deed to successfully advise and cause the old man to attempt, alone and unprepared, to leave his home without clothes or money; Thompson accompanying him to the depot and buying a ticket for him to Texas.

"Equity will not refuse to set aside a contract when it plainly appears that one party overreached the other, and gained an unjust and undeserved advantage which it would be inequitable and unrighteous to permit him to enforce, although the victim owes his predicament largely to his own stupidity and carelessness."

In Iredell & Stone v. H. L. Moody and Wife, 41 Wash. 680, 84 Pac. 617, 85 Pac. 346, 5 L. R. A. (N. S.) 799, it is well said:

"It is well known that many good people and people of average or greater intelligence

are sometimes duped and misled by the skill, cleverness, and artifices of those who are adepts in the matter of deceiving their fellow men; and courts should not throw about schemers of this kind a protection that will tend to encourage the practices of their arts."

If it be admitted that Thompson was not, at the time the deed was executed, the attorney of Wills, yet previously the relation of client and attorney for many years had existed, and the influence of Thompson over Wills, due to such relations, continued. In Pomeroy's Equity Jurisprudence, § 961, it is said:

"The general doctrine of equity applies to the parties after the legal condition of guardianship has ended, and as long as the dependence on one side and the influence on the other presumptively or in fact continues. This influence is presumed to last while the guardian's functions are to any extent still performed, while the property is still at all under his control, and until the accounts have been finally settled. It follows, therefore, that any conveyance, purchase, sale, contract, and especially gift, by which the guardian derives a benefit, made after the termination of the legal relation, but while the influence lasts, is presumed to be invalid and voidable. The burden rests heavily upon the guardian to prove all the circumstances of knowledge, free consent, good faith, absence of influence, which alone can overcome the presumption."

What is here said in regard to guardian and ward applies equally to client and attorney, though the relation of client and attorney had ceased to exist. In the well-considered case of Daniel v. Tolon, 53 Okla. 666, 157 Pac. 756, Judge Sharp quotes with approval Story's Equity Jurisprudence, § 317, which reads:

"But courts of equity proceed yet further in cases of this sort. They will not permit transactions between guardians and wards, to stand, even when they have occurred after the minority has ceased and the relation become thereby ended, if the intermediate period be short, unless the circumstances demonstrate, in the highest sense of the term, the fullest deliberation on the part of the ward, and the most abundant good faith (uberrima fides) on the part of the guardian. However, in all such cases the relation is still considered as having an undue influence upon the mind of the ward."

The great weight of evidence being against the decree rendered by the special judge, the cause is reversed and remanded, with instructions that the judgment rendered, together with the finding of facts as found by special judge, be set aside and held for naught; that the deed executed by Wills to Thompson be set aside, canceled, and held for naught; that an account be taken to ascertain what amount is due by the estate of Wills to Thompson; that the title to said property described in said deed be quieted in the heirs of Thomas Wills, deceased, upon the payment of any amount that may be found due by the estate of Thomas Wills to Thompson upon said accounting, and, if the amount found due to Thompson by said estate upon said accounting be not paid, that any legal mortgage held by Thompson for the payment of same be foreclosed; that the receiver at the earliest practicable date render to the trial court an account of all receipts and expenditures by him as such receiver; that the amount, if any, in his hands, be paid into court to await further decision of this cause, and that the receiver be retained to collect the rents of said property, and that as same are collected for each month that the same be deposited with the said district court to await the final disposition of this cause; and, the receiver having been appointed by agreement, that his fees and expenses be equally taxed against the parties to this suit, and that the other costs in this cause that have accrued to this date be taxed against the defendant in error.

By the Court: It so ordered.

Note.—Judge RITTENHOUSE having disqualified as one of the judges to hear and determine this case, Judge COLLIER was called to hear the oral argument, and was assigned to write the opinion in this case.