## HAYES v. THORNSBROUGH et al.

No. 26794. June 22, 1937.

Hal Welch and Truman Harrison, for plaintiff in error.

E. Moore, for defendants in error.

HURST, J. In this case we are called upon to determine whether plaintiff, in a suit to quiet title, is under the circumstances entitled to cancellation of a warranty deed given by her to the county judge.

There is considerable dispute about the facts, but the following circumstances appear from the uncontradicted portions of the record and from the testimony of the defendant, Judge Thornsbrough.

Thomas Hayes was a full-blood Choctaw Indian and owned 160 acres of land in Coal county which constituted his homestead allotment. He was the fourth husband of the plaintiff, Stella Hayes, a white woman, and at the time of his death on January 30, 1934, she was his only heir. They had separated several times and she had filed three suits for divorce, but all were settled and dismissed. She was represented by an attorney, and Thornsbrough represented her husband. When Thomas Hayes died, he owed Thornsbrough $150 for legal services. On June 9, 1931, while he and his wife were separated, Thomas Hayes executed a will in which he devised to Thornsbrough 80 acres out of his homestead al-

lotment, which is the subject of this controversy, together with other property. The remainder he left to his wife, Stella Hayes. The will was properly executed, but it was not approved as required by the acts of Congress. When Thomas Hayes died, Thornsbrough was county judge of Coal county. He disqualified and filed a petition for probate of the will, and on February 20, 1934, it was admitted to probate. On February 21, 1934, Stella Hayes executed and delivered to Thornsbrough a warranty deed covering the 80 acres given him in the will. On January 16, 1935, Thornsbrough executed an oil and gas lease on said premises to Patsy Greenan, Jr., and received $400 consideration. On February 21, 1935, Stella Hayes executed a quitclaim deed covering said 80 acres to Patsy Greenan, Jr. for a consideration of $5, and on February 25, 1935, Patsy Greenan, Jr., in turn executed a quitclaim deed to Thornsbrough.

On March 8, 1935, Stella Hayes commenced this action against Thornsbrough and Patsy Greenan, Jr., to quiet her title. the defendants set out their deeds in their answer, and plaintiff in her reply prayed that they be canceled. At the trial of the case the court granted her permission to amend her reply to seek in the alternative the cancellation of the interest of Patsy Greenan, Jr., or an accounting from Thornsbrough of all money he had received therefor. Judgment was rendered for defendants, and plaintiff brings this appeal.

1. The first contention of plaintiff is that the will of Thomas Hayes is void for the reason that it was not approved as required by Act of Congress of April 26, 1906, as amended May 27, 1908. We agree with this contention. 34 Stat. L. 137, as amended by 35 Stat. L. 312, makes a will of a full-blood Indian devising real estate invalid if it disinherits to any extent either "a parent, wife, spouse, or children of such full-blood," unless it is acknowledged before and approved by a United States Commissioner, Judge of the United States Court for Indian Territory, or county judge. It is held that such person is considered disinherited if he takes property of less value under the will than he would receive by inheritance, and the admission of the will to probate does not correct the defect. Coats v. Riley (1932) 154 Okla. 291, 7 P. (2d) 644. Since the plaintiff is the only heir, she was clearly disinherited by the provision in the will devising one-half of the homestead allotment to Thornsbrough.

2. Plaintiff next contends that the warranty deed to Thornsbrough was without consideration and was obtained by fraud and undue influence. The record justifies the conclusion of the trial court that there was no actual intent to perpetrate a fraud in the case at bar, and many of the allegations of duress and undue influence were unsupported by the evidence. Therefore, the question is whether a fiduciary relation existed under the facts between plaintiff and Thornsbrough creating a presumption of fraud, and, if so, whether he has succeeded in rebutting such presumption.

In Lewis v. Schafer (1933) 163 Okla. 94, 20 P. (2d) 1048, this court, in finding a fiduciary relationship to exist between an employer and his employee, stated the rule thus:

"The question as to whether a fiduciary relationship existed is to be determined wholly upon the record facts therein. The courts have generally refrained from defining the particular instances of fiduciary relationship in such manner that other and new cases might be excluded. The expression 'fiduciary relationship' is one of broad meaning, including both technical relations and those informal relations which exist whenever one man trusts and relies upon another. Reeves v. Crum, 97 Okla. 293, 225 P. 177."

See, also, Derdyn v. Low, 94 Okla. 41, 220 P. 945; McDaniel v. Schroeder, 128 Okla. 91, 261 P. 224, 226; 25 C. J. 1119, and 18 C. J. 239, for statement of the rule. The Supreme Court of Utah in Renshaw v. Tracy Loan & Trust Co. (1935) 49 P. (2d) 403, in denying a fiduciary relation between employer and employee, made the following lucid analysis:

"It is true that, upon the establishment of certain fiduciary relationships and transactions between the parties to that relationship, equity will presume fraud, the abuse of confidence, and place the burden of proving good faith and fairness upon the dominant party in the relationship. In such cases the presumption of fraud may be based upon the relationship alone and relieves the party from proving the fraud, but the fraud is nevertheless an essential element. By the presumption equity supplies that element. The relationships wherein such presumption has been indulged are parent and child, principal and agent, attorney and client, guardian and ward, executor or administrator and heir, beneficiary or distributee. In other cases the presumption of fraud has been given effect when there has been a relationship of confidence plus other circumstances tending to show that some advantage had been

taken by the dominant party with a consequent abuse of confidence. * * * It is always a question, therefore, of the actual relationship between the parties that must be inquired into, and not whether the terms 'fiduciary,' 'confidential,' or 'trust' can, with some degree of reason, be applied to the relationship."

Such confidence has been found to exist from the bare fact of the relationship of guardian and ward (Daniel v. Tolon [1916] 53 Okla. 666, 157 P. 756), and under certain circumstances between attorney and client (Miller v. Thompson [1917] 69 Okla. 264, 171 P. 850).

We do not hold that the office of county judge of itself places the judge in a position of trust and confidence in all of his personal transactions during his term of office. But it is an element strongly to be considered in reaching that conclusion, and this is particularly true where he deals with persons living in his county and who are interested in matters pending in the court over which he customarily presides. The office of county judge itself signifies trust and confidence, as he deals generally with estates of minors, incompetents, and deceased persons requiring his protection and guidance.

In the case at bar, the record discloses that the plaintiff is an ignorant woman and was interested in an estate pending in the county where the defendant was elected and serving as county judge. The evidence contains several statements of plaintiff that she put confidence in defendant, as he was county judge, and that she looked to him for help. She stated: "I put all the confidence in him. Him being county judge and giving me advice and attending to this." Again, referring to the papers she signed in the judge's office, she said: "I put confidence in him to fix them." And further: "I looked to our county judge for all the help in the world to see after this." Another statement was this: "Well, all I knew what to do was to come in and look to him for everything. Well as I can explain. To get what I had coming and for him to help me out in that way." She testified that she could not read or write other than to sign her name. However, the defendant testified that she could read. She also testified that she was inexperienced in business dealings, but this also was contradicted by the evidence that she had sold property inherited from her three previous Indian husbands and at least to that extent had experience in dealing with land.

The record further shows that prior to the death of plaintiff's husband, the defendant wrote letters for them, and although it is true that the defendant had formerly been employed as attorney by plaintiff's husband in a capacity antagonistic to her interests, the fact appears clear from the entire record that she considered the defendant as the county judge who was handling her estate and that she placed trust and confidence in him. We deem it immaterial that he disqualified in the particular case in which she was interested in absence of any showing that she had knowledge of the significance of that act. We therefore find that the defendant as county judge occupied a fiduciary relation towards plaintiff in this transaction.

The defendant occupied the dominant position in the relation, and once it is established, the transaction in which he obtained a deed from plaintiff is presumptively fraudulent. The defendant is, therefore, under the burden of showing by clear and convincing evidence that there has been no abuse of the confidence, and that he has acted in good faith and that the transaction was perfectly fair and supported by adequate consideration. Moore v. Moore (1934) 167 Okla. 365, 29 P. (2d) 961; Lewis v. Schafer, supra; Lambdin v. Dantzebecker (Md. 1935) 181 A. 353. We find that the defendant has not sustained this burden. There was no cash consideration for the warranty deed executed by plaintiff to him, and the attorney's fee was an obligation of the estate and not of the plaintiff. The claim could have been filed and pressed against the nonexempt assets of the estate. Also, because of the relative positions of the defendant and the plaintiff, he was under a duty to tell her that the will did not legally convey to him the property in question before closing the transaction with her. Plaintiff testified that he told her the will was valid and that she inherited half of the land, but this was contradicted by the defendant, who testified that he did not tell her the will was valid. However, he did admit, by his own testimony, that he failed to advise her at all regarding its legal effect. Under the circumstances, it was the duty of Thornsbrough to inform the plaintiff of the invalidity of the will and not remain silent.

The deed was dated February 21, 1934, but the will was admitted to probate the day before. At the time plaintiff executed the deed she asked defendant if that would

relieve her of the necessity of appearing in court, and he replied that it would. Again it was the duty of Thornsbrough to speak and advise plaintiff that the hearing had already been held. This he did not do. Therefore, the judgment of the trial court in this respect is against the clear weight of the evidence.

3. Plaintiff further contends that the quitclaim deed she executed to defendant Patsy Greenan, Jr., was merely to obtain a ratification of the oil and gas lease and conveyed no further interest in the premises. The testimony as to the intention of the parties, admitted without objection, clearly supports this contention, and plaintiff in her brief admits that he is an innocent purchaser of the oil and gas lease. Therefore, the quitclaim deed from defendant Greenan to defendant Thornsbrough conveyed no further interest and does not affect the title of plaintiff. There is no contest between these defendants as to the effect of this instrument.

4. The record shows that Thornsbrough received $400 for the execution of the oil and gas lease and $20 for rent of the premises for pasturage. Plaintiff is entitled to all profits received from this land, and an accounting to ascertain the amount so collected.

5. The contention of plaintiff throughout is that she received no consideration or benefit of any kind for her conveyance of the warranty deed to the defendant. Thus she is not required to make or tender restitution in her pleadings as prescribed in Harlow Pub. Co. v. Pennel & Harrison (1937) 179 Okla. 360, 65 P. (2d) 1206, construing section 9500, O. S. 1931. However, this is an equity case and it is a recognized rule in equity that one will not be permitted to cancel his contract or conveyance and retain any benefit which he may derive from it. By a conditional decree, a court of equity may restore the parties to statu quo whenever possible. In exercising this power the Supreme Court of Idaho in Gamblin v. Dickson (1910) 112 P. 213, quoting from Carlton v. Hulett (Minn.) 51 N. W. 1053, stated the rule as follows:

"By submitting her cause to the court, the plaintiff expressed a willingness to perform such conditions as it may regard necessary to impose as proper terms on which relief shall be granted. What such a plaintiff ought to do, and what he must do to reinstate the other party in statu quo, as a condition for repudiation and rescission, is for the court, which always possesses the necessary power to determine the question."

The record shows that Thornsbrough claimed an attorney's fee owing from the estate of plaintiff's husband. His testimony was that the amount was $150, while plaintiff asserted the amount to be $50 or $60. Although we have held that this could not comprise the consideration for the warranty deed, nevertheless, plaintiff being the sole beneficiary of the estate, would be benefited by the canceling of this debt. In order to place the parties in statu quo, Thornsbrough is entitled to offset his claim against the money to be received from the estate by plaintiff under our holding.

The judgment is reversed, with directions to the trial court to proceed with the accounting in accordance with the views herein expressed, allowing credit for the amount of the attorney's fee owing to Thornsbrough.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, PHELPS, CORN, and GIBSON, JJ., concur. BUSBY, J., dissents. WELCH, J., absent.

BUSBY, J. (dissenting). I dissent from the conclusion reached in the majority opinion. As I analyze the facts, I do not believe the law announced in syllabus 2 has proper application thereto. The plaintiff contends that the warranty deed involved was without consideration and was obtained by fraud and undue influence. With reference to this point the majority opinion finds "that the record justifies the conclusion of the trial court that there was no actual intent to perpetrate a fraud in the case at bar and many of the allegations of duress and undue influence were unsupported by the evidence."

The trial court, who heard the testimony and observed the witnesses on the stand, found as follows:

"The court finds that said deed was based upon a valid consideration and its execution and delivery by the plaintiff to the defendant was free from fraud, undue influence or other inequitable circumstances; that said deed is valid and conveys to the said defendant the fee simple title to the above-described premises."

The plaintiff in this case was not a woman without experience in the transfer of real estate. She had inherited and disposed of the allotments received from three former deceased husbands. As I interpret the record in this case, she executed the deed in question voluntarily and under no

duress. As a matter of law, she could have given the land to any person she desired without consideration. Nor do I agree that there was a fiduciary relationship existing between the defendant Thornsbrough and the plaintiff. The defendant Thornsbrough had represented her husband, the allottee of the lands in question, while a practicing attorney in three divorce actions brought by her. He had never represented her as her attorney, but had been on the other side of the litigation referred to. Normally this would not tend to cause her to seek his advice nor would it establish a confidential relationship between the parties. As I interpret the transaction, it was a private one between plaintiff and Thornsbrough. The mere fact that Thornsbrough happened to be county judge when he attended to a business matter growing out of his former law practice did not create a fiduciary relationship and is not analogous to the rules of law applying to guardian and ward. Plaintiff did not prove such a relationship of confidence or trust between herself and Thornsbrough as to shift the burden of proof to him to the extent that he was forced to show by clear and convincing evidence that there was no abuse of plaintiff's confidence and that he had acted in good faith in the entire transaction. It is the application of the facts, as disclosed by the record, to the rule of law announced in syllabus 2 to which I especially dissent. Plaintiff had the burden of proof to sustain the allegations of her petition when she filed her action. I do not believe the burden of proof shifted to the defendant. The trial court found that the plaintiff had failed to maintain the burden; therefore it is my opinion that the judgment of the trial court should be affirmed.