### LEWIS v. SCHAFER.

No. 20496. Opinion Filed March 28, 1933.

Rehearing Denied April 18, 1933.

Davidson & Williams, for plaintiff in error.

H. B. Martin, D. Clayton Arnold, and Ferrell Martin. for defendant in error.

OSBORN. J. This action was commenced in the district court of Creek county by Pearl E. Schafer against Mildred B. Lewis for the cancellation of a deed to an undivided one-half interest in certain lands in Creek county.

The cause came on for trial on October 23. 1928. and the court found the issues in favor of plaintiff and ordered the deed canceled. and defendant has appealed.

The record shows that the plaintiff. as a trained nurse. was employed by A. E. Lewis, husband of the defendant. on March 4, 1918. to take care of his children; that she remained in his employ until some time in the year of 1924; that her salary was to be $35 per week, and was later increased to $45 per week, later reduced to $20 per week. The record further shows that at the time she

entered the employ of the Lewis family she owned some stocks and real estate worth several thousand dollars. It appears that A. E. Lewis was president of the Liberty National Bank of Tulsa, and that his brother, W. L. Lewis, was vice president.

Plaintiff testified that she did not draw her salary at regular intervals, but had an account at the Liberty National Bank, and from time to time she was credited at the bank in the amounts of salary due her from Lewis. She further testified that she imposed great trust and confidence in her employer, and that at his suggestion she permitted him to use her money, as well as the securities which she owned; that she bought other stocks during the time she was employed by Lewis; that he handled the transactions for her, and that she knew very little about any of the details. She further testified that her employer at numerous times mentioned her faithfulness as an employee, and told her that he considered her as one of the family and as a reward for her loyalty, he intended "to do something nice for her," and, as she understood it, he was going to present her with some land which might have oil value.

The record shows that on June 27, 1922, she executed a note to the Liberty National Bank for $7,500, secured by certain stocks that she owned. Her testimony in regard to the transaction is very vague, but the testimony of A. E. Lewis is that this note was given for the purchase of bank stock which he later sold for plaintiff at a profit of $500, which he paid her by check. The record also shows that on June 2, 1923, plaintiff executed a note for $3,882.50 to the bank, secured by 15 shares of stock in the Prairie Oil & Gas Company, and in regard to this note her testimony is likewise vague and indefinite, but the testimony offered by the defense was to the effect that this note was given to buy the Prairie Oil & Gas Company stock.

The record further shows that during the month of October, 1923, A. E. Lewis and W. L. Lewis deeded to plaintiff the land in question. The deed was dated back to May 10, 1923 and was filed for record October 18, 1923. It is further shown that on October 15, 1923, the plaintiff executed a mortgage on this land in the sum of $8,400 to the Liberty National Bank to secure a note of the same amount executed at the same time. The record shows that out of the proceeds of the $8,400 note, a balance due on the note for $7,500 was paid, and the interest and a small part of the principal of the $3,882.50 note was paid. It appears that the $7,500 note had been reduced

prior to this time to the sum of $5,744, which, together with the other payments made out of the proceeds of the latter note, made a total of $6,390.74. The record is silent as to what was done with the balance of the $8,400 note.

The record shows that on November 5, 1923, the Liberty National Bank sold out to the Security National Bank of Tulsa, and that among the assets transferred was plaintiff's $8,400 note and the mortgage securing it.

It is further shown that about November 11, 1923, plaintiff approached A. E. Lewis in regard to her money that he had used; that he stated to her that he could not pay her the money, but would give her a note that would be as "good as gold"; that they figured up the total of his indebtedness to her for money he had used, including a $1,000 Liberty Bond, which, with all interest due, amounted to $8,051.40, for which he gave her his promissory note dated November 1, 1923, upon which he later made some payments, leaving a balance due of $5,640.40; that a petition in bankruptcy against A. E. Lewis was later filed, and he subsequently received a discharge in bankruptcy. The record further shows that a transaction was had between the Security National Bank and the defendant, Mrs. Mildred B. Lewis, whereby she deeded her interest in their home to the bank and received a number of notes which had been transferred to the Security National Bank as assets of the Liberty National Bank, and among them was the $8,400 note signed by plaintiff.

The defendant and her husband, A. E. Lewis, testified that they made a proposition to plaintiff to deliver her this note if she would execute a deed to Mrs. Lewis for the land in question; that this proposition was favorable to plaintiff, and that she duly executed the deed and delivered the same to Mrs. Lewis, and that the mortgage and note were immediately canceled. The testimony of the plaintiff in this connection is that she signed the deed in question at the instigation of A. E. Lewis; that he did not tell her that it was a deed; that she did not read the instrument, and that by reason of the explanation he made at the time she was induced to believe that it was merely some formal paper which would give him authority to act as her agent in the transaction of some business matters; that by reason of their close relationship for the several years, she had implicit trust and confidence in him, and except for the fiduciary relationship existing between them she would never have signed the deed, as

she had no intention whatever of transferring the land, and that the entire transaction was wholly without consideration.

Since this is an equity case, this court will examine and weigh the evidence, but the findings and judgment of the trial court will not be disturbed on appeal unless it is made to appear that such findings and judgment are against the clear weight of the evidence. McKay v. Kelly, 130 Okla. 62, 264 P. 814; Cull v. Cavanaugh, 95 Okla. 157, 218 P. 299; Thomas v. Halsell, 63 Okla. 203, 164 P. 458.

The question as to whether a fiduciary relationship existed is to be determined wholly upon the record facts herein. The courts have generally refrained from defining the particular instances of fiduciary relationship in such manner that other and new cases might be excluded. The expression "fiduciary relationship" is one of broad meaning, including both technical relations and those informal relations which exist whenever one man trusts and relies upon another. Reeves v. Crum, 97 Okla. 293, 225 P. 177.

In the case of Derdyn v. Low, 94 Okla. 41, 220 P. 945, it is said:

"A 'confidential relation' arises by reason of kinship between the parties or professional, business, or social relations that would reasonably lead an ordinarily prudent person in the management of his business affairs to repose that degree of confidence in the defendant which largely results in the substitution of the will of the defendant for that of the plaintiff in the material matters involved in the transaction."

The following quotation has been adopted by this court in the case of McDaniel v. Schroeder, 128 Okla. 91, 261 P. 224:

" 'Whenever two persons stand in such relation that, while it continues, confidence is necessarily reposed by one, and the influence * * * of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation had existed.' 2 Pom. Eq. Jur. (3rd Ed.) 956."

After a careful examination of the record herein, we must conclude that plaintiff bestowed such confidence and trust in her employer, A. E. Lewis, with reference to handling her money and property that it resulted in a substitution of his will for her own in their various transactions. It is clear that he had absolute control of her bank account and securities. The record shows that he wrote checks on her account in considerable sums of money. We must also conclude that she did not know the exact status of her funds and accounts at various stages of their transactions, for, on one occasion when she requested from him a statement of her account, he submitted a written memorandum reciting the various amounts, and informed her that these funds were in the bank. The record discloses, however, that her funds were actually in the possession of Lewis, and, in an attempt to culminate all the transactions between them, he gave her a note in the sum of $8,051.40, which represented her money that he had used and did not account for. The record further shows that he reduced the note by payments to the sum of $5,645.40, which represents the amount actually lost by plaintiff through the course of the various transactions. The record shows the following statement in the testimony of A. E. Lewis:

"You never handed her a paper to sign which she didn't sign? I don't believe I ever asked her to sign anything that she didn't."

In view of the above facts, together with other record facts and the circumstances and conditions surrounding the various transactions, we are driven irresistibly to the conclusion that plaintiff's confidence in Lewis was absolute and complete; that their various business transactions were directed solely by his will, and that as a result of these transactions she suffered detriment and damage in the loss of $5,645.40, which had been intrusted to him. In view of this relation, the burden rests upon Lewis to show that he has taken no undue advantage of plaintiff, and that his transactions with her were fair and conscientious. In the case of Clinton v. Miller, 77 Okla. 173, 186 P. 932, the following rule is announced:

"Transactions between persons occupying confidential relations with each other in which the stronger or superior party obtains an advantage over the other cannot be upheld. In such transactions the burden of proof is cast on the superior party to establish the perfect fairness of the transaction, and that the consideration was adequate."

See, also, Daniel v. Tolon, 53 Okla. 666, 157 P. 756, 4 A. L. R. 704; Kernel v. Murrell, 122 Okla. 22, 250 P. 420, 12 R. C. L. 427.

The record shows that, on the 15th day of October, 1923, A. E. Lewis was indebted to plaintiff in the sum of $5,744, which was evidenced by a note in the sum of $7,500, payable to the bank, which had been reduced by payment to the above amount,

which note had been signed and secured by plaintiff for the purchase of some bank stock; that the bank stock had been sold, and that he had paid plaintiff her profit, but had neglected to pay the balance due on the note.

Lewis deeded the land to plaintiff and had her execute the note for $8,400, secured by a mortgage on said land, merely for the purpose of concealing his defalcation arising by his failure to pay the balance due on the $7,500 note from the proceeds of the sale of the bank stock. This note was her obligation to the bank, and having diverted the funds received from the sale of the stock, he thereby became indebted to her for the balance due on said note in the sum of more than $5,700. Instead of Lewis executing the mortgage to the plaintiff to secure his defalcation, he simply had the plaintiff execute a note and mortgage against the land in controversy, and thereupon retired, out of said $8,400 note, the balance of over $5,700 remaining due on the $7,500 note. Thus his defalcation was effectively concealed in the assets of the bank. This transaction amounted to nothing more nor less than the plaintiff executing a mortgage to pay a debt owed to her instead of owing by her. Fraud inhered, therefore, in the very incipiency of the note.

It is evident that A. E. Lewis occupied the position of a trustee of the funds of plaintiff, and that he failed to account to her for a portion of said funds in the amount of $5,645.40. In the case of Pollack v. Leonard & Braniff, 112 Okla. 276, 241 P. 158, it is said:

"Equity will follow trust money through any number of transmutations and restore it to the owner so long as it can be identified in its original or substituted form.

"Where money impressed with a trust is converted by the wrongdoer into a negotiable instrument, such instrument will be impressed with the trust in the hands of such wrongdoer, or his assignee with notice."

See, also, Goldrick v. Roxana Pet. Co., 74 Okla. 55, 176 P. 932.

In tracing the funds of plaintiff through the various transactions involved herein, the record shows these funds were involved in the $7,500 note given for bank stock, which note was not paid by Lewis when he sold the stock. The funds of plaintiff are, therefore, traced into the $8,400 note secured by a mortgage on the land involved. This note is found in the assets of the Liberty National Bank, transferred from there to the Security National Bank, and, at a late hour

of the night it was transferred to defendant, Mrs. Mildred B. Lewis. Thereafter this note was canceled when the deed to the lands was delivered to defendant, and the result of this transaction was to deliver back to the Lewises the land involved, free, clear, and discharged of the lien of the $8,400 mortgage, which, as before stated, was executed in the first instance in lieu of funds of plaintiff misappropriated by A. E. Lewis.

It is necessary to determine whether or not defendant, Mrs. Mildred B. Lewis, is entitled to protection herein as an innocent holder. The principal question is whether or not she had notice of the facts and circumstances surrounding the $8,400 mortgage. In this connection the record shows that a short time after the transfer of the assets of the Liberty National Bank, A. E. Lewis and W. L. Lewis were called into conference by the bank officers and bank examiner; that the conference lasted nearly all night, and that about four o'clock in the morning the wives of A. E. Lewis and W. L. Lewis were called into the conference and at that time they joined their husbands in the execution of deeds to their homes to the bank, and defendant received in exchange certain notes which had been listed as assets of the Liberty National Bank, including the note involved herein. Although A. E. Lewis and the defendant were all present at the all-night conference, the record does not disclose many of the details of the transaction there; however, in the testimony of A. E. Lewis we find this statement:

"My wife, when she got that note of Mrs. Schafer's the night they turned in the houses, knew what was back of that because I told her; she knew what was back of some other notes because I told her."

We can only indulge in the presumption that he told her the truth, and consequently she was fully advised as to the previous transactions and is not entitled to protection as an innocent holder for value without notice. We must, therefore, conclude that plaintiff is correct in the contention that the defendant herein was merely used by her husband as a means to carry out his design and purpose to regain possession and title to the land involved without discharging the mortgage indebtedness against it, and that her ownership was, in fact, his ownership.

Since the $8,400 note is thereby traced again into the custody and ownership of A. E. Lewis, through the agency of his wife,

and the right of no innocent holder has intervened, and since said note, secured by said mortgage, was, in truth and in fact, his own obligation to plaintiff, the full force of the transaction in which plaintiff deeded the land to defendant and defendant canceled the note and mortgage was to wipe out the obligation and lien against the property to which plaintiff was entitled, as the proceeds of her own money.

This transaction with its attendant results lends credence to plaintiff's testimony that she did not know or understand the nature of the various transactions had with Lewis.

It is clear that this transaction constituted a breach of the fiduciary relationship between the parties, and fraud upon plaintiff, and, if allowed to stand, would effectually bar plaintiff from a recovery of the trust funds represented by the note and mortgage of $8,400.

The trial court did not make specific findings of fact and conclusions of law. This court will, therefore, presume that the lower court found in favor of plaintiff, such facts as are necessary to support the judgment. We, therefore, assume that in consideration of all the facts and circumstances the trial court concluded that it would be inequitable and unconscionable to allow the transaction involving the transfer of the land from plaintiff to defendant to stand; that, although the deed was given to plaintiff in the first instance without consideration, all of the transactions occurring subsequent thereto vested in plaintiff such an equitable interest or estate in said lands that, to deprive her of the legal title thereto, would be contrary to equity and good conscience, for the reason that it would allow A. E. Lewis to perpetrate a scheme or arrangement to appropriate plaintiff's funds to his own use and benefit, and by destroying plaintiff's legal title and mortgage lien upon the lands at the same time, forever bar her from recovery of any of the funds so misappropriated.

Courts of equity are vested with broad powers in dealing with transactions such as are disclosed in the instant case, involving fraud, fiduciary relationship, and all other unconscionable transactions. In such cases courts have recognized a double ownership, equitable and legal, and will impress a constructive trust upon the property in favor of the one who is in equity and good conscience entitled to it. In this case the trial court evidently found that Mrs. Mildred B. Lewis was in truth and in fact a constructive trustee of the land involved for the use and benefit of plaintiff, and in so holding we think it was amply justified by the evidence.

In the case of Hayden v. Dannenberg, 42 Okla. 776, 143 P. 859, it is said:

"Where a party obtains the legal title to property, not only by fraud or by violation of confidence, or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain it against the rightful owner, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."

The following quotation has heretofore been cited with approval by this court:

"If one person having money or any kind of property belonging to another in his hands wrongfully uses it for the purchase of land, taking the title in his own name; or if a trustee or other fiduciary person wrongfully converts the trust fund into a different species of property, taking to himself the title; or if an agent or bailee wrongfully disposes of his principal's securities and with the proceeds purchases other securities in his own name, in these, and all similar cases, equity impresses a constructive trust upon the new form or species of property, not only while it is in the hands of the original wrongdoer, but so long as it can be followed and identified in whosesoever hands it may come, except those of a bona fide purchaser for value and without notice; and the court will enforce the constructive trust for the beneficial owner or original cestui que trust who has thus been defrauded." Pomeroy's Equity (4th Ed.) sections 1047-1049, 1051-1053.

See Edwards v. Edwards, 108 Okla. 93, 233 P. 477; Teuscher v. Gragg, 136 Okla. 129, 276 P. 753; Richards v. Lowery, 135 Okla. 243, 275 P. 335; Rollow v. Taylor, 104 Okla. 275, 231 P. 224.

It is urged by defendant that the court erred in the admission of certain evidence under the pleadings, and that the judgment of the court is not justified by the pleadings. When a person comes properly within the jurisdiction of a court of equity, this court will liberally construe the pleadings. In the case of Cull v. Cavanaugh, 95 Okla. 157, 218 P. 299, it is said:

"It is not essential to equitable relief from fraud that an action be to enforce an express trust, or to declare a resulting trust, or for the enforcement or annulment of a contract, nor that the fraud be of a particular character; it will suffice in equity if

fraud has been designedly perpetrated to the substantial detriment of the defrauded party, and the law is inadequate to proper relief."

In the case of Cobb v. Whitney, 124 Okla. 193, 255 P. 577, it is said:

"It is a fundamental rule that equity, having once attached in a proper proceeding, will administer complete relief on all questions properly raised by the evidence, regardless of whether or not such questions or issues are specifically raised by the pleadings, as equity will not permit a mere form to conceal the real position and substantial rights of the parties. It always attempts to get at the substance of things and to ascertain, uphold, and enforce rights and duties which spring from the real relations of the parties. It will not suffer the mere appearance and external form to conceal the true purposes, objects, and consequences of a transaction."

See, also, Collier v. Bartlett, 71 Okla. 133, 175 P. 247; Inman v. Western National Bank, 83 Okla. 126, 200 P. 714.

The record in this case discloses that the value of the lands in controversy is less than the sum out of which the plaintiff has been defrauded by the various machinations of the husband of, defendant. The findings and conclusions above announced are within the evidence adduced at the trial, and equity. regarding substance rather than from, will grant such relief as against fraud as will effectively combat the results thereof, and, to that end, will liberally construe the pleadings of the parties to effectuate such relief. The pleadings in this cause, together with the evidence adduced thereunder at the trial, are sufficient to justify the relief granted.

We cannot say that the judgment of the trial court is against the clear weight of the evidence. and the same is affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL. McNEILL. and BUSBY, JJ., concur. ANDREWS and BAYLESS, JJ.. dissent. WELCH, J., absent.