**LACKEY et al. v. QUIGLEY, Receiver.**

No. 26952. Nov. 23, 1937.

Rehearing Denied Jan. 4, 1938.

Duff & Manatt, for plaintiffs in error.

Monett & Savage, for defendant in error.

OSBORN, C. J. E. J. Quigley, as receiver of Tulsa Americans, Inc., instituted this action in the district court of Tulsa county against George A. Lackey, Tulsa Professional Hockey Club, Inc., Arthur J. Devlin, and W. J. Young, wherein plaintiff sought to establish a constructive trust and to declare defendants to be constructive trustees of certain property in their possession, which property was formerly owned by Tulsa Americans, Inc. After 'a hearing, the trial court refused to establish a trust, but rendered judgment against the defendants in the sum of $4,150 on the theory that defendants had wrongfully converted property of that value to their own use and benefit. From said judgment, defendants h'ave appealed. The parties will be referred to as they appeared in the trial court.

The Tulsa Americans, Inc., is an Oklahoma corporation organized June 23, 1933. Plaintiff, E. J. Quigley, was appointed and qualified as its receiver on November 18, 1934. Its business was operating a professional hockey team, known as the "Tulsa Oilers." Its income was derived from charges made to the public for attendance at competitive hockey games played by the Tulsa Oilers with other professional hockey teams. Immediately upon the incorporation of Tulsa Americans, Inc., 12,606 shares of stock were issued as follows: One share to Kay Iverson, president and director; 12,599 shares to the wife of Kay Iverson; one share to each of the six remaining directors of the comp'any. Kay Iverson was president and general manager of the company and the defendant George A. Lackey was secretary-treasurer and assistant general manager. Seven directors were elected and qualified. Iverson 'and Lackey were members of the board of directors, consisting of business men in the city of Tulsa, acted as directors of the company without any personal inter-est in the corporation, but were directors because of their interest in the promotion of the game of hockey in Tulsa. The company had an exclusive franchise for the city of Tulsa, granted to Kay Iverson on January 21, 1933, by the American Hockey Association, which franchise was assigned to the company by Kay Iverson immediately upon its organization in exchange for stock. The American Hockey Association is a voluntary 'association and at that time consisted of four clubs, one at Oklahoma City, one at Tulsa, one at Kansas City, and one at St. Louis. Each club had one member on the executive committee of the association which was the governing board thereof.

The Tulsa Oilers commenced playing exhibition games in November, 1933, and continued the same until April, 1934. The company was in bad financial condition at the end of the 1933-1934 season. There were outstanding and unpaid current bills approximating $8,000.

On April 22, 1934, a special meeting of the American Hockey Association was held in the Alvin Hotel, in Tulsa. At this meeting charges were filed against Kay Iverson for various acts of misconduct. After a hearing upon the charges filed, the following resolution was adopted:

"Whereas, it appears to all present upon evidence submitted that the Tulsa Oilers (common name of the hockey team owned and operated by the Tulsa Americans, Inc.), has been mismanaged; checks issued for which there were no funds in the bank; payment stopped on checks issued; moneys collected for state and federal tax which were not paid; and further, fights started in rinks and other unsportsm'anlike conduct on the part of Kay W. Iverson, president and manager of the team, and further action on the part of said Kay W. Iverson not to the benefit and financial good for the promotion of professional hockey.

"Now, therefore, be it resolved, th'at Kay W. Iverson be hereby suspended from the American Hockey Association and the franchise be hereby revoked, and be it further

"Resolved, that a committee of one—the president of the association, W. F. Grant—be delegated with full power to act with a committee of interested parties in Tulsa to insure professional hockey in Tulsa for next season with 'assurance that a franchise will be granted to said responsible parties to operate a club at Tulsa."

At the same meeting of the board, the defendant Lackey was appointed to make some investigation to determine whether or not the club could be refinanced and 'arrange-

ments made to re-employ the players then under contract to the Tulsa Americans, Inc., in order that hockey might be continued in the city of Tulsa. Lackey agreed to pay, and subsequently did pay, to Iverson, the sum of $1,000 for his interest in the club and secured an agreement whereby he (Iverson) agreed that he would not become interested in professional hockey in the city of Tulsa for a term of five years. On May 24, 1934, Iverson executed and delivered to Lackey a written assignment and conveyance of all the players' contracts, eleven in number, and all of the equipment and other property of the Tulsa Americans, Inc., and assigned to him in blank 12,600 of the 12,606 shares of outstanding stock of the company. It was provided in the players' contracts that the company should have an option of renewing said contracts for one year, provided said option was exercised on or before November 15, 1934. Defendant Lackey organized and incorporated the Tulsa Professional Hockey Club, Inc., on November 23, 1934. On October 13, 1934, the American Hockey Association delivered to Lackey a franchise for the city of Tulsa, which franchise was delivered to him in blank. He thereafter assigned and delivered the franchise to the new corporation in exchange for stock. It appears that 16,002 shares of stock were issued in the new corporation. Defendant Lackey was the owner of 16,000 shares, defendants W. J. Young and Arthur J. Devlin were the owners of one share each. The franchise, appraised at $15,000, and the $1,000 paid by Lackey to Iverson constituted the consideration for the stock issued to Lackey. The two shares were issued to the other defendants without consideration. Defendant Lackey did not exercise the options to renew the players' contracts held by the former corporation, but permitted the options to expire and thereafter entered into new contracts with the players. It appears that the former corporation was indebted to each of the players in various amounts for back salaries. These amounts were paid by Lackey when the new contracts were executed. Thereafter the schedule of the American Hockey Association commenced and through the playing of games on the regular schedule of the association the new corporation made a substantial profit.

It is the theory of plaintiff that the facts which we have outlined show a conspiracy between Lackey. who is referred to as the principal defendant, and the American Hockey Association, by which Lackey was to acquire, without consideration, all of the assets of the plaintiff corporation, including the equipment, the players' contracts, and the trade name, "Tulsa Oilers," to the detriment and disadvantage of the creditors of said corporation, and that the said Lackey should be adjudged the trustee of said property and assets for the use and benefit of the plaintiff receiver.

The trial court refused to establish a constructive trust, and plaintiff makes no complaint regarding the nature of the relief granted. On appeal it is urged, first, that the judgment is outside of the issues made by the pleadings. It is a fundamental rule that equity, having once attached in a proper proceeding, will administer complete relief on all questions raised by the evidence, regardless of whether or not such questions or issues are specifically raised by the pleadings, as equity will not permit a mere form to conceal the real position and substantial rights of the parties. Lewis v. Schafer, 163 Okla. 94, 20 P. (2d) 1048. In the light of the record facts in the instant case, it does not appear that the trial court was without power or jurisdiction to render a money judgment against defendants.

It is further urged that the judgment of the trial court is contrary to the clear weight of the evidence. The judgment was predicated on the theory that, through the course of the dealings to which we have referred, the new corporation acquired certain property and assets of the old corporation of the value of $4,150 for which no compensation had been made to the old corporation. It is conceded that there were but two items of property involved. The first was the physical equipment, consisting of uniforms, gloves, pads, hockey sticks, and other paraphernalia of the appraised value of $109.25.

The only other element of damages considered by the trial court involves the contracts with the players. As heretofore stated, eleven players were under contract with the Tulsa Americans for the season of 1933-34. The season had expired long before the new corporation was organized, but each of the contracts provided for an option upon the services of the player for the succeeding season, and further provided that the option must be exercised on or before November 15, 1934. After the options had expired, the defendant Lackey, as the managing officer of the new corporation, entered into new contracts with eight of the players who were formerly under contract with the Tulsa Americans, Inc. There is considerable conflict in the evidence regarding the value of these options. It is argued on behalf of defendants that, under the cir-

cumstances here shown, the options were of no value to plaintiff company; that, since its franchise had been revoked, it was without authority to re-employ the players; that, under the rules and regulations of the association, when a franchise was revoked, the players automatically became the property of the association. In this connection the rules and by-laws of the association were introduced in evidence, and these provisions are not clearly established by such rules and by-laws, but the undisputed and uncontroverted evidence is that such regulations had been established by custom and were recognized by all members of the association as the rules and regulations thereof.

In the light of the evidence on the point, we are forced to the conclusion that the value of the options for renewal of players' contracts was improperly considered as an item of damages recoverable herein, since there were no property rights in the players' contracts when the franchise was revoked and they were of no value to the corporation. The conclusion of the trial court to the contrary is against the clear weight of the evidence.

Accordingly, the recovery of plaintiff to the extent of the value of the physical equipment hereinabove referred to is approved, while the recovery predicated upon the value of the options on players' contracts is disapproved.

The judgment is reversed and the cause remanded, with directions to enter judgment in accordance with the views herein expressed.

RILEY, PHELPS, GIBSON, and DAVISON, JJ., concur.