## CRABTREE et ux. v. STANDARD SAVINGS & LOAN ASS'N.

No. 28909. April 30, 1940.

*102 P. 2d 127.*

Aiden E. Allen and Ernest Crabtree, both of Ada, for plaintiffs in error.

Ben Hatcher, of Ada, for defendant in error.

RILEY, J. Plaintiffs, Ernest Crabtree and Mable Crabtree, his wife, filed this action October 29, 1937, seeking to compel the Standard Savings & Loan Association to specifically perform a contract for the sale of real estate. From a judgment for defendant and an order overruling a motion for a new trial, plaintiffs bring this appeal. The parties will hereafter be designated plaintiffs and defendant, as they appeared below.

Plaintiffs alleged that on January 1, 1935, they entered into an oral contract with defendant, through its agent R. J. Lollar, for the purchase of a certain house and lot in the city of Ada, Okla.; that defendant agreed to furnish an abstract of title, execute and acknowledge a purchase contract, and to execute a warranty deed and place the same in escrow with defendant's agent or some other suitable person at Ada; that plaintiffs paid $240 cash and took possession under the oral contract, and pursuant thereto made extensive, valuable improvements; that on February 18, 1935, Lollar presented a written

contract providing for sale of the premises for the sum of $1,400, and providing for payment of the balance in monthly installments; that plaintiffs signed said contract with the understanding it would be forwarded to defendant's home office at Detroit, Mich., and returned properly executed and acknowledged for recordation; that plaintiffs subsequently paid $280 in installments and made improvements valued at $500; that though repeatedly requested, defendant has failed to deliver the written contract for deed or a copy thereof, to furnish abstract of title for examination, and to execute and place the warranty deed in escrow at Ada.

Plaintiffs tendered payment of all sums due under the contract if defendant would comply with the terms thereof, and prayed for judgment of specific performance, or in event such performance was impossible, then for judgment in the amount of $1,020 damages, caused by defendant's failure to perform the contract.

Defendant filed a general denial and cross-petition setting forth the contract executed February 18, 1935, and alleging plaintiffs paid $100 cash at the time the contract was executed, and installments of $20 per month to and including July 18, 1936, making a total of $440 paid; that the installment due August 18, 1936, and for each succeeding month to and including November 18, 1937, had not been paid, making a total delinquency in the amount of $320; that the reasonable rental value of the property was $30 per month; and that plaintiffs' failure to carry out the terms of the contract had damaged defendant in the sum of $990 to and including November 18, 1937.

Defendant then offered to restore the sum of $440 paid by plaintiffs; and prayed for cancellation and rescission of the contract, possession of the property, and for an equitable adjustment between the parties of the sums claimed paid and unpaid.

The trial court's order overruling plaintiffs' request for a jury trial is assigned as error.

Plaintiffs contend two causes of action are alleged in their petition, that is, one for specific performance of an oral contract, and one for damages for breach of the contract in the event specific performance could not be had; and that while the first cause may be equitable, the second is a legal action triable to a jury.

This contention was disposed of in West v. Madansky, 80 Okla. 161, 194 P. 439, as follows:

"The fact that a petition may show that plaintiff is entitled to relief, either in law or equity, because of a single wrong done to him by defendant, and the fact that he may pray for relief in law, if relief in equity be impracticable, do not constitute two distinct causes of action, nor render the petition defective for misjoinder."

See, also, 1 Pom. Equity (3d Ed.) 342.

Plaintiffs next contend that defendant's answer and cross-petition alleges a cause of action for damages as well as for possession of specific real property. This contention is also without merit.

Defendant in its cross-petition does not allege a cause of action for damages. The cause stated is for rescission and cancellation of the contract. In addition and incidental thereto, defendant offers to restore the money paid by plaintiffs, and in turn asks the court to equitably adjust this sum against the reasonable rental value of the property during its occupancy by plaintiff. Defendant clearly pleads an equitable action.

In Nicholson v. Roberts, 144 Okla. 116, 289 P. 331, it was held:

"A suit by a vendor against a vendee in possession for the cancellation of a contract to sell real property predicated on the vendee's default, from which action there would follow as an incident upon judgment of cancellation an award for the possession of the property, is an equitable action as in rescission."

Plaintiffs next contend that defendant's prayer for immediate possession, as

contained in the cross-petition, converts the action into one in ejectment.

In view of our holding in Cullins v. Elerick, 110 Okla. 132, 236 P. 886, this contention is untenable. Therein it was held:

"A suit to rescind a contract and for possession of real property, based upon the ground that the vendee has not complied with the terms of the contract which provides that the vendee shall make certain payments on the purchase price and pay the taxes and insurance before a deed shall be delivered, is an equitable action, and not an action in ejectment."

Plaintiffs next complain because the trial court refused permission to file an amended petition, which substantially realleged the facts stated in the original petition, and in addition alleged plaintiffs had suffered damage in the sum of $2,000, because of discomfort, shame, humiliation, pain and anguish resulting from the insufficient size of the house and its disrepair, which plaintiffs could not remedy because of the insecurity of their title.

Plaintiffs then prayed for judgment of specific performance, or in the alternative for damages as alleged.

From the record it appears the original petition was filed October 29, 1937; the answer was filed November 29, 1937; the case was set for trial March 2, 1938, and, on plaintiffs' motion, was continued to March 16, 1938; and on the last-mentioned date, plaintiffs gave a copy of the proposed amended petition to defendant's counsel, and after the case had been called for trial, asked leave to file the same.

No attempt was made by plaintiffs to explain the delay in presenting the proposed amended petition.

As we view this contention, the action of the trial court in refusing the amendment was a matter entirely within the sound discretion of the court. Walters v. Tulsa Rig, Reel & Mfg. Co., 113 Okla. 293, 241 P. 1095. And the trial court's ruling thereon will not be reversed on appeal unless an abuse of such discretion is shown. Mitchell v. Hines, 101 Okla. 38, 223 P. 182.

Plaintiffs' contention is without merit.

The remaining contentions advanced for reversal of this cause may be said to urge that the judgment of the trial court is against the clear weight of the evidence.

During the trial, plaintiffs offered to pay into court all sums due under the contract, providing defendant would (1) furnish a copy of the contract between them, properly acknowledged for recordation, (2) furnish an abstract showing merchantable title, and (3) execute and place in escrow at Ada a warranty deed to the property.

Defendant thereafter offered to accept all payments due under the contract, providing plaintiffs would pay taxes due, attorney fees, and accrued costs. Defendant did not offer to perform either of plaintiffs' three requests.

The offers do not arise to the dignity of tenders, but if made in good faith, and such is assumed, the offers indicate both parties prefer continuation of the contractual relationship. The controversy revolves primarily around the question of whether the parties are bound by the oral contract alleged by the plaintiffs or by the written contract of February 18, 1937, pleaded by defendant.

Plaintiffs admitted they signed the written contract of February 18th, after which it was sent to Detroit, Mich., for execution by defendant. The president of defendant corporation signed the contract, which was attested by the secretary. Plaintiffs' principal contention that the omission of the corporate acknowledgment prevented this becoming a binding contract is not well taken. The contract became valid and binding as between the parties when executed by both the purchasers and seller. Addition of the acknowledgment would only enable plaintiffs to place the agreement of record. It cannot be overlooked that plaintiffs made 17 monthly payments, most of

them subsequent to signing the contract. The court found the written contract was valid and binding. This finding is not against the clear weight of the evidence, and is hereby affirmed.

We now consider the interpretation placed upon the contractual relationship of the parties by the trial court.

It is not only reasonable but is admitted by defendant that plaintiffs were to receive a copy of the contract. We also observe that the form used was the regular printed form used by defendant under similar circumstances, that the form contained blank acknowledgments for both an individual and a corporate acknowledgment; that a mark had been drawn through the former, and that the contract term extended over a period of ten years. The contract is wholly silent on the question of acknowledgment. It seems only reasonable that, under the circumstances, plaintiffs' contention is correct. Certainly equity and good conscience should prompt the defendant to meet this request of the plaintiffs.

Plaintiffs' contention that an abstract should be furnished depends upon interpretation of the terms of the written contract. Therein it was provided, "* * * on or before the completion of this contract at the seller's option to deliver to the purchaser a policy of title insurance or abstract of title and tax history certified to substantially the date of delivery, and upon payment of all sums owing hereon to execute and deliver to the purchaser or his assign the usual warranty deed. * * *"

Apparently the trial court construed the above provision of the contract as giving defendant the option of furnishing an abstract either on or before plaintiffs had completed their payments under the contract. We do not so construe the contract.

Defendant had the option of furnishing either an abstract of title and tax history or a policy of title insurance on or before "completion" of the contract. As here used, "completion of the contract" should be construed as synonymous with "execution of the contract," that is, signing of the contract. Defendant should have delivered to plaintiffs either an abstract of title and tax history or a policy of title insurance at the time the "completed," that is, the signed contract, was returned from Detroit.

We believe use of the expression "completion of the contract" is significant in view of the latter portion of that sentence which reads: "* * * and upon payment of all sums owing hereon to execute * * * the usual warranty deed. * * *" Evidently the defendant, whose usual form contract was used, wished "completion" to express a time and action prior to payment of all sums due. It is difficult to believe that a seller would expect or a buyer would agree to make payments on a tract of realty for a period of ten years without having first determined the merchantability of the title. Certainly a contract should not be so construed unless it specifically provided therefor in terms free from ambiguity.

The foregoing precludes plaintiffs' next contention, that a warranty deed should be executed and placed in escrow pending payment of all sums under the contract. It was clearly provided therein that the deed was to be executed and delivered after plaintiffs had made all payments due under the terms of the contract. Plaintiffs' contention is untenable.

The trial court found plaintiffs made improvements on the property valued at $640, and had made payments under the contract in the amount of $440. Plaintiffs alleged and produced evidence that the value of the improvements was $500. Obviously this holding is against the clear weight of the evidence and resulted in an error favorable to plaintiffs in the sum of $140. The trial court should have found plaintiffs' payments and improvements totaled $940.

The court found the benefit and use of the property by plaintiffs for a period of 38 months was $1,080, and that the damage to defendant cross-petitioner during that period was in the same amount. The two sums were then offset against each other and judgment rendered for defend-

ant for rescission of the contract and possession of the property.

Defendant produced two witnesses, plaintiffs none, who testified the rental value of the property during plaintiffs' occupancy was $30 per month, but on cross-examination admitted the rental value was increased by the improvements made by plaintiffs. At no time did the witnesses give the rental value of the property in the condition existing prior to the improvements, nor was the date of such improvements given. The evidence was insufficient to permit an accurate determination of the reasonable rental value of the property during plaintiffs' occupancy.

The case is reversed and remanded, with directions that the trial court require defendant to deposit in court the contract of February 18, 1935, properly acknowledged, and also to deposit in court either an abstract of title and tax history or a policy of title insurance showing it is the owner of the fee-simple title to the premises involved. The court shall direct plaintiffs to examine the instruments under such conditions as may be reasonable, and then require plaintiffs to pay into court all sums due defendant under said contract. Thereupon the court shall deliver the above-mentioned instruments to plaintiffs, the money to defendant and enter judgment for specific performance of the contract by defendant. The costs shall be divided equally.

If for any reason the contractual relationship between plaintiffs and defendant cannot be continued in accordance with the views herein expressed, the court shall then take testimony and determine the damages suffered by the respective parties and render judgment accordingly.

BAYLESS, C. J., and OSBORN, HURST, and DAVISON, JJ., concur. WELCH, V. C. J., concurs in result. CORN, GIBSON, and DANNER, JJ., absent.