Marguerite MABEN, Administratrix of the Estate of William N. Maben, Deceased, Plaintiff in Error,

v.

George NORVELL, Administrator of the Estate of Woodson Norvell, Deceased, Defendant in Error.

No. 36661.

Supreme Court of Oklahoma.

July 8, 1958.

Rehearing Denied July 30, 1958.

Disney, Hart & Disney, Wheeler & Wheeler, Tulsa, for plaintiff in Error.

R. D. Hudson, Tulsa, for defendant in error.

## PER CURIAM.

The subject matter of this action is an attorney's fee to be collected by Norvell's estate on a contingent fee contract, or contract for fee to be allowed Norvell, in an action before the Mexican Claims Commission. Plaintiff contends that while that action was pending Maben acquired from Norvell a fifteen percent interest in the fee for cash advanced to Norvell, and for assistance rendered in the case. The claim and action referred to as the "Mexicali" case was successful and the amount of the fee therein awarded and to be paid to Norvell's estate in subsequent payments of installments is admitted. Both Norvell and Maben were elderly men, long time friends and experienced attorneys. Both men died within a few days of each other.

The evidence in the case is furnished by oral testimony, letters and documents, and oral testimony about the written documents.

There is a written assignment reciting that Norvell assigned to Maben a fifteen per cent interest in the attorney's fee for $1,500 cash advanced and other assistance to be furnished by Maben on request. The trial court found that the signature of Norvell on this assignment was a forgery though there was much evidence to the contrary.

Thereupon the trial court found generally in favor of defendant and denied plaintiff any recovery upon the conclusion of the trial court that the sole issue of fact to be determined was the validity of the said written assignment. We observe this statement in the findings of the trial court, to-wit:

"This suit is brought upon a written assignment. The genuineness of this assignment is the sole factual question which I am compelled to decide, or rather only the signature attached to

that assignment purporting to be the signature of Woodson E. Norvell. The genuineness of that signature is the fact question involved."

In thus restricting the issues to be determined we are convinced that the trial court was led into error. While the questioned assignment was attached to *plaintiff's petition*, nevertheless the gist of the action was the claim of *plaintiff,* as administratrix, that the decedent Maben was entitled to fifteen percent of the Norvell fee, and that therefore the estate of Maben was entitled thereto. If that claim could be established either by a valid assignment or by contributions by Maben and letters or other written acknowledgments signed by Norvell, the result would be the same.

In this case there was proof of such contributions by Maben and of written acknowledgments by Norvell of unquestioned validity, other than the "assignment," which tended strongly to fix Maben's right to the claimed fifteen percent.

Not only is such proof apparent to us, but it was apparent to the trial court, as we observe this in the trial court's findings:

"Were it not for plaintiff's Exhibit No. 11, the decision on this particular fact question would not be difficult for me, but in plaintiff's Exhibit No. 11, or rather from this exhibit, I am compelled to believe that at one time, at least, W. N. Maben had a fifteen percent interest in the Mexicali fee, and I refer to the first paragraph—'we are certain to get six hundred thousand dollars principal, and perhaps one hundred and seventy-five thousand dollars interest in the Mexicali case. There is just a possibility that we may lose this interest, but will make a fight for it. This interest would mean about twenty-six thousand dollars on your part of the interest alone.' That figures almost 15% exactly, and from other correspondence in the case between these two gentlemen, I have concluded that at one time or other William N. Maben had a definite interest in the

fee in the Mexicali case, but that is not the issue for me to decide in this case."

We think the true issue to be decided herein was whether the decedent, Maben, was entitled to a fifteen percent interest in the "Mexicali" fee, not merely whether a specific assignment presented by the plaintiff, administratrix, appeared to the satisfaction of the trial court to bear a valid signature.

After the trial court announced from the bench the findings from which the two quoted paragraphs are copied, the case was continued for further hearing. Thereafter, and because the issues of fact had been so restricted by the trial court as aforesaid, the plaintiff requested permission to amend her petition, and tendered her amended petition to allege that, irrespective of the assignment which the trial court was not willing to accept as valid, a joint venture or limited partnership was entered into and agreed upon between Maben and Norvell, during their lives, by the terms of which Maben, for valid and valuable consideration, would receive an interest of 15% in the attorney's fee award to be made to Norvell in the "Mexicali" case; that Norvell had fully ratified the same and bound himself to it, in writing as shown by the aforesaid Exhibit No. 11, and other authentic writings in evidence.

Upon further hearing the trial court ruled as follows:

"Plaintiff's request to amend petition overruled, exception allowed; judgment in addition to the informal decision heretofore made as to the facts, is entered for the defendant; exception allowed, plaintiff gives notice in open court of his intention to appeal. 60–10–5 for case made, all as per J. E."

It is contended by plaintiff that the trial court abused its discretion in refusing to allow plaintiff to amend her petition to conform to proof.

Sec. 317, Title 12, O.S.A. provides in part as follows:

"The court, may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, * * * by inserting other allegations material to the case, or conform the pleading or proceeding to the facts proved, when such amendment does not change substantially the claim or defense; * *"

We observe this text statement in 71 C.J.S. Pleading § 285 para. d.:

"Further amendments have been permitted changing the theory of recovery where the essential facts remain the same, changing the facts constituting a breach of trust, changing the basis of recovery from tort to contract or from contract to tort, from express contract to implied contract. * *"

In the case of Krieger v. Marshall, Okl., 292 P.2d 379, 380, this court held:

"The statutes and also the decisions of the courts of this state are extremely liberal in permitting amendments to pleadings so long as such amendments are in furtherance of justice, and amendments which even change the cause of action may be permitted, provided they do not substantially change the plaintiffs' claim."

Section 317 of the statutes, supra, was clearly designed to aid in the furtherance of justice. Our court has universally held that under said section the trial court is vested with a wide discretion in permitting amendments in furtherance of justice, but no decision of this court has been called to our attention, and we have been unable to find any which tends to sustain the trial court in rejecting an amendment which would evidently aid in the furtherance of justice. The discretion allowed by the above section is to enable the court to ascertain and administer justice. It was never intended that justice should be or might be defeated by rejecting an amendment which, on its face, shows that justice would have been aided by permitting such amendment. Shade v. Miller, 131 Okl. 23, 267 P. 626; See, also, Rogers v. Jones, 194

Okl. 50, 147 P.2d 164; Okmulgee Supply Corporation v. Oil Well Supply Co., 167 Okl. 505, 30 P.2d 903; Hunt v. Tulsa Terrazzo & Mosaic Co., 157 Okl. 174, 11 P.2d 521, and Detwiler v. Duncan, 199 Okl. 189, 185 P.2d 200.

We are of the opinion that in furtherance of justice, the plaintiff should be entitled to proceed in the prosecution of her case on a theory consistent with the facts proven and evidence admitted, and on the full issue as to whether Maben at and prior to his death was entitled to a 15% interest in the sum involved.

Here there is evidence tending to show that the estate of Norvell is obligated to the estate of Maben, therefore a court of equity should not invalidate such obligation by restricting plaintiff to the authenticity of the written assignment, and disregarding all other pertinent evidence.

In furtherance of justice the plaintiff's request to file amended petition should have been granted, and the trial court committed error in denying said request.

Indeed, without additional pleadings, the trial court might have accorded plaintiff's estate a more extensive hearing, and a more unrestricted determination of the rights involved. In Lackey v. Quigley, 181 Okl. 492, 74 P.2d 927, this Court followed the stated rule that:

"Equity, when once attached in a proper proceeding, will administer complete relief on all issues properly raised by the evidence regardless of whether they were specifically raised by the pleadings."

And in the body of the opinion it was said:

"* * * It is a fundamental rule that equity, having once attached in a proper proceeding, will administer complete relief on all questions raised by the evidence, regardless of whether or not such questions or issues are specifically raised by the pleadings, as equity will not permit a mere form to conceal the real position and substantial rights of the parties. Lewis v. Schafer, 163 Okl. 94, 20 P.2d 1048. In the light of the record facts in the instant case it does not appear that the trial court was without power or jurisdiction to render a money judgment against defendants."

There are other assignments dealing with the weight of the evidence on various points, but we refain from discussing them since the case must be fully re-tried.

The judgment appealed from is reversed, and the cause remanded with directions to vacate the judgment, and to permit plaintiff to file an amended petition, and after both parties are granted their full rights to amend their pleadings, that the cause be re-tried on such revised pleadings.

WELCH, C. J., CORN, V. C. J., and JOHNSON, BLACKBIRD and CARLILE, JJ., concur.

HALLEY, DAVISON, WILLIAMS and JACKSON, JJ., dissent.

HALLEY, Justice.

It is with regret that I am compelled to dissent from the majority opinion in this case.

This case was tried by an able and eminently fair trial judge whose judgment in this case is sustained both by the evidence and the law. I set out here that part of his decision handed down on the 25th of February, 1954, not shown in the majority opinion:

"This suit is brought upon a written assignment. The genuineness of this assignment is the sole factual question which I am compelled to decide, or rather only the signature attached to that assignment purporting to be the signature of Woodson E. Norvell. The genuineness of that signature is the fact question involved.

"Before proceeding further I do want to say that I have a great deal of respect for the two expert handwriting witnesses who appeared in this case.

While I had never met either of them before, they have been here two days and from their attitude and demeanor, the testimony, I concluded that they are both honorable gentlemen, both of them well-experienced, so for the purpose of deciding this one simple fact question, I am going to disregard the opinions expressed by each of these experts since they expressed exactly opposite opinions, and I am only going to rely upon the things that I can see that they have pointed out to me, together with some other circumstances.

"Defendant's exhibit #4, which was plead as a part of plaintiff's petition, in my opinion is the most damaging thing that has happened to the plaintiff's case, and in this exhibit, consisting of a letter from Woodson E. Norvell to Judge Maben wherein no possible mention was made of the Mexicalli claims, has been added below the signature of Woodson E. Norvell this language—'you say you want a new Mexicalli assignment. This letter constitutes a 'new assignment to you as of this date, February 1, 1947, Mexicalli case, 15% of my part of the award, $300,000.00, full 15% accrues April 7, 1951, and is a lien upon said award.' There is absolutely no justification in that letter for such a postscript to be added. Furthermore, the postscript was added, according to the undisputed evidence in this case, by the typewriter in the office of W. N. Maben. Since I am called upon to pass upon the genuineness of plaintiff's exhibit #1, the plaintiff must suffer by reason of this obvious spurious attempt to bolster the case.

"I want to refer to plaintiff's exhibits numbers 4 and 5 which were introduced to show that sometimes Woodson E. Norvell corrected his signature to explain the correction in plaintiff's exhibit #1. It is obvious to the naked eye that there was no occasion, no need for any correction of either of those signatures, and any obvious correction of them in my opinion could have been made but for one purpose, and that was to bolster the plaintiff's case. As I stated in the record, I am partially color blind, but in examining those signatures under the microscope as I did, under the glass, or with the naked eye it becomes apparent to me that the correction was made not only unnecessarily but by some person other than Woodson E. Norvell.

"Then I want to call attention to Defendant's exhibit number 17. It is a very touching letter, purported to have been dictated by Judge William Maben to George E. Norvell to be delivered only after the death of William N. Maben. That letter does not bear the genuine signature of W. N. Maben. Counsel for the plaintiff has made no contention in this case that it does. You exhibited it to your expert in my presence and he has never suggested even that it is anything other than a carbon signature. There has been no proof that it was mailed by the plaintiff in this case; the plaintiff in this case has sit here through the trial for two days, but has not elected to make any statement concerning whether she did or did not mail that letter which is, which within was enclosed Defendant's exhibit number 16, which is a genuine contract signed by William N. Maben and his wife, Marguerite, setting over to her various and many interest in litigations similar to this, but in which no mention is made of the Mexicalli Claim. So with the abundant effort to bolster plaintiff's exhibit number 1, they have destroyed plaintiff's exhibit number 1 as a valid instrument insofar as I am concerned.

"Now the experts who have pointed out things, with reference to exhibit Number 1, that I can see, some with my naked eye, some with my ordinary reading glasses, others with the magnifying glass that I used, and others with the microscope that was furnished. Throughout the entire space where the signature Woodson E. Norvell appears

there is an obvious erasure, or obvious at least when examined by me by means of the microscope. ·Obviously the signature now appearing is written over another signature. There could have been no valid reason as far as I can determine from this testimony for any erasure by Judge Norvell of his signature and then re-writing it over or in a retracing of it. The writing has so many ear marks of a doctored forged signature that taken in connection with the other spurious instruments offered to bolster, it compels me to say that I have arrived at the conclusion that the purported signature of Woodson E. Norvell on plaintiff's exhibit Number 1 is not the genuine signature of Woodson E. Norvell.

"Now as to the other part of the case, Gentlemen, the legal questions involved are almost now made unnecessary for decision, but when do you want to continue the case in order to complete my formal opinion on the entire plaintiff's cause and let you perfect your record."

It is to be remembered that at no time did Judge W. N. Maben ever contend in his lifetime that he had an interest in the attorney's fee in the Mexicali case.

To me it is quite significant, as it was to the trial judge, that defendant's exhibit 17, which was written eleven days before the death of Judge Maben and mailed three days after his death to George Norvell, the son of Woodson Norvell and administrator of his estate, contained the statement that Judge Maben had no interest in the fee in the Mexicali case. This letter was undoubtedly written and mailed by Marguerite Maben, the wife of Judge W. N. Maben and administratrix of his estate. She knew more about the affairs of Judge Maben than any other living person. She knew when that letter was written that W. N. Maben made no claim to an interest in the fee in the Mexicali case. She is the one person that would profit most should she, as plaintiff, be successful in this case. Her absence from the witness stand could not but carry weight against the soundness of her claim in this case.

There is simply no question but that the trial court's judgment should be affirmed in this case because it is not against the clear weight of the evidence but in fact is sustained by the evidence.

To effect a reversal the majority opinion says the trial court committed error in refusing to permit the plaintiff to file an amended petition to conform to the evidence. This request was untimely and there was no evidence that would sustain the allegations contained therein. The only possible evidence that Maben ever had an interest in the Mexicali case was that statement contained in plaintiff's exhibit 11 which was:

"We are certain to get 600,000 principal and perhaps 175,000 interest in Mexicali case. There is just a possibility that we may lose this interest, but will make a fight for it. This interest would mean about $26,000 on your part of interest alone."

This is not a statement that Judge Maben had an interest in the fee. It was only that he might have a claim to a share of the interest on the principal of the Mexicali case. Certainly there is nothing to show he had a claim to a part of the attorney's fee. I believe that the award in the Mexicali case was made in 1946. Certainly these gentlemen would have settled any claim that Judge Maben would have had in that case long before their deaths in 1950. Most certainly Judge Maben would have mentioned it in his letter to George Norvell dictated on January 11, 1950.

The majority opinion reverses the trial court requiring it to vacate the judgment and permit the plaintiff to file an amended petition and to retry the case. Section 317, 12 O.S.1951, provides as follows:

"The court, may, before or after judgment, in furtherance of justice, and on ·such terms as may be proper, amend any pleadings, * · * * or by inserting other allegations material to the case, or conform the pleading or

proceeding to the facts proved, when such amendment does not change substantially the claim or defense; * *"

The assignment, plaintiff's exhibit, which she relied on, was clearly a forgery. The witnesses thereon were of the unreliable sort and the other witness, Joe J. Teal, Sr., showed clearly that he did not know just what he was testifying to and his testimony was of no value in determining the issues in this case.

The majority opinion approaches the question of permitting the plaintiff to amend her petition in a reverse manner for the trial court is to be sustained if possible. I submit that the evidence does not uphold the statements contained in the majority opinion on the facts in this case. There is nothing in the evidence in this case that would show that justice would be aided by permitting the amendment offered in this case. Rather, injustice would be abetted.

The majority well knows that the rule in Oklahoma is that a trial court will not be reversed for failure to allow an amendment unless there is a showing of abuse of judicial discretion. In Walters v. Tulsa Rig, Reel & Mfg. Co., 113 Okl. 293, 241 P. 1095, 1097, we said:

"Amendments to pleadings are largely within the discretion of the trial court, and, to authorize a reversal of a judgment because an amendment was not allowed to be filed, there must be such a showing as produces a reasonable conviction that there was an abuse of judicial discretion."

Also, in Luke v. Patterson, 196 Okl. 522, 164 P.2d 394, 396, we said:

"Under 12 O.S.1941 § 317 amendments to pleadings may be made in the furtherance of justice where they do not substantially change the claim or defense. But the allowance of such amendments is not a matter of absolute right, but rests within the sound judicial discretion of the trial court, (Sabin v. Levorsen, 193 Okl. 320, 145 P.2d 402; Crabtree v. Standard Savings & Loan Ass'n, 187 Okl. 189, 102 P.2d 127) and

in the absence of abuse of discretion, rulings of the trial court permitting or refusing such amendments will not be disturbed on appeal. Townsend v. Townsend, 174 Okl. 185, 50 P.2d 147; Donnelly v. Atkins, 130 Okl. 33, 264 P. 911; Mitchell v. Hines, 101 Okl. 38, 223 P. 182."

The filing of the amendment was not permitted in the case quoted from. There has been no abuse of discretion here. It was plain the plaintiff had no case.

I repeat there is no evidence in the record that at the time of his death, Woodson Norvell owed W. N. Maben a penny on the Mexicali case or that Maben had any interest in the fee. No one can say just what Mr. Norvell had in mind when he made the statement shown in plaintiff's exhibit 11. He certainly did not say that Maben had a fifteen per cent interest in the entire recovery in the Mexicali case. Nor did he say that Maben had a fifteen per cent interest in the fee in that case. If Norvell owed Maben anything on this case he had evidently paid it.

This case should be affirmed. I dissent to its reversal.